Mr. Tuggle is an individual who is subject to the terms of supervision by the District Court. It is true that as an individual subject to the Court's supervision, his rights are constrained and the Court can impose reasonable limitations on those rights. However, the Court is not unlimited in its authority to impose conditions of supervision on Mr. Tuggle. The District Court must comply with the statutory obligations to find a connection between those conditions and the goals of 3553A. Below in the District Court, this case began with the allegation that Mr. Tuggle had engaged in an act of domestic violence. That contention had been disputed by Mr. Tuggle from the date of his arrest forward. He has never made any admissions. He has consistently and persistently denied the allegations of domestic violence. Before the District Court, the government had the opportunity to prove up these allegations and to do so at a very favorable burden of proof, only more probable than not. However, the government elected not to move forward with these allegations of domestic violence to a favorable standard because the government was aware, as was Mr. Tuggle, that the government would not be able to meet that standard. The allegations brought by Ms. Etheridge-Clark were highly questionable. The factual basis for those allegations were highly questionable. As we briefly summarized before the District Court, we had significant evidence to present to establish the questionable nature of these violations and also to call into question whether Ms. Etheridge-Clark had in fact committed the crime of making a false police report and false statements to the police during that police report. Nevertheless, in spite of the fact that there was no proof of any allegation of domestic violence, the District Court modified Mr. Tuggle's conditions of supervision to require him to both engage in a domestic violence evaluation and to have no further contract with the young woman who made the allegations. Do you have any idea what a domestic violence evaluation means? Who does it? What do they do? And it's a strange requirement because it doesn't say what to do after the evaluation. So, what is this? Correct. A domestic violence evaluation, as I represented to the District Court, is much like a drug and alcohol evaluation or the sexual predator evaluation the Supreme Court was discussing in McCune. They ask the individual about their past behavior and their past conduct. When you have a fight with your spouse, do you find yourself getting physical? Do you find your anger uncontrollable? That's the type of questions they ask in an evaluation. By a social worker or by a? It can be done by a master's of social work. It can be done by a counselor. There are actually individuals who specialize in the field. Primarily, they are social workers, masters of social work, or therapists. Their evaluation, they say you have a problem with potential domestic violence. Period. Because that's all the judge ordered. Well, but that's based upon the individual disclosing past conduct. I understand that, but we'll get to that. But I want to know what happens if you have an evaluation. It's more than one session. It's one session. Do we have any idea? I have had clients undertake domestic violence evaluations that were completed in one four-hour session. All right. I have had therapists who engaged in multiple sessions. It depends. So now he's evaluated. But that's all the judge ordered, just to be evaluated. So now you're evaluated, and they say, what? What's the conclusion? Well, the problem with the evaluation includes the Fifth Amendment issues, which we have also addressed. And the issue is whether, and I assume if the evaluation came back with a suggestion for domestic violence treatment, they would have asked to have him, the original request was that he be engaged in domestic violence treatment. Over, as we were objecting, they reduced it to just let's evaluate. And our statement remains there's no basis. You have to go back to the judge and say you should have this treatment. Right. They would have gone back. And our position remains there's no basis for an evaluation. In terms of the Fifth Amendment issue, I have two questions. One is, I thought it was fairly routine for probation conditions to include answering any question your probation officer asks you, which as I understand it includes, did you commit this, did you, do you have drugs, for example? They certainly, there can be times when the probation officer will ask questions that implicate the Fifth Amendment, and we have always encouraged our clients that when they find themselves in that situation in the future, prior to answering that question of the probation officer, they might want to ask to consult with an attorney. When we know, when we absolutely know they are going to be asked these questions, such as in a sex offender evaluation, in a domestic violence evaluation, we always assert and should, must kindly assert the Fifth Amendment privilege. Well, the judge said he wasn't going to order him to waive any of his constitutional rights, so you're saying, well, you advise your clients to ask to see an attorney, so apparently that would be an acceptable procedure. So, the social worker or the psychologist is saying, do you find problems in dealing with your wife? He's not, you think that, that's the example you gave. You think that trenches on Fifth Amendment? Certainly. If the evaluation is going to ask, have you ever hit a woman? That's not the way you phrased the question. That is. You said that the hypothetical question, I understood you to say, when you have arguments with your wife, do you find yourself losing your temper? You think that's a Fifth Amendment objectionable question? I think that a number of questions in the domestic violence evaluation, just as in the evaluation for sexual crimes, will raise Fifth Amendment issues. I agree with that. I'm assuming that, but the judge said I'm not ordering him to waive any Fifth Amendment objection. He said I can't do that. Correct. However, coming back to what Judge Berzon was asking, maybe this gets to the ripeness issue. You're saying, well, A, we'd have to agree with you that there is no foundation for the judges requiring even a domestic violence evaluation. But let's suppose we disagree with you. Then the question is, what's the scope of that evaluation? And you're raising the Fifth Amendment. I'm not sure, any more than Judge Berzon was, what the evaluation would consist of. It could very well get into areas, have you ever beat your, when did you stop beating your wife type of question. So is this really, should we say, even though there was cause to do it, to have an evaluation, it's foreclosed on his face because of the Fifth Amendment issue. The issue that the court has previously addressed when the Fifth Amendment concerns were raised as an antelope was the specific protection that the individual would be ordered to complete the evaluation and successfully complete, because that is the term. You must successfully complete. In an antelope, they said, therefore, you must be given a specific order that it can never be used against you. That did not occur here. Why, the statement from the judge is, I would not order that. There is no prohibition on any use of his answers. And therefore, you would be relying on Mr. Tuggle, an individual with a 12th grade education, to evaluate every question as it's coming at him. Does this one implicate my Fifth Amendment? Maybe. Well, that's what you said with the drug questioning. You said your clients, your advisor clients, to make a judgment of the kind you're talking about. And seek your counsel. And it would be a very broad, broad question. If they start asking you about any criminal activity whatsoever, please invoke your Fifth Amendment. Not on a question-by-question basis, because most clients are incapable of doing that. When a person goes to the police station and invokes their Fifth Amendment privilege, all questioning stops, shuts. Not just the questioning that may not implicate them in a crime, but all questioning stops. Because we don't expect them to. Bottom line is that you would be satisfied if we either interpret the district court on remand, change the order to say, nothing that is said in this evaluation could be used in a criminal proceeding. That would, at the minimum, be necessary. But we do not agree, and we do very specifically contest, that there has been any basis for this evaluation under the statutory requirements. And it cannot simply be based. Why isn't there just a basis? Because she said this, and now she's saying it isn't so. So there's a, without making a judgment as to whether it's true or isn't true, there is at least some suggestion that either it was true, or there was a sufficient animosity between them that she made up a story like that, both of which suggest that there was a great deal of tension in this relationship. There is sufficient evidence, and there was significant evidence, if you look at the excerpts of records starting on page 8, that this woman lied to the police about a number of facts, about being pregnant, about what happened. She lied to the jail in terms of what her name was when she sought to contact Mr. Tuggle after she had him arrested. And she used the name of the woman that the father had brought up that night at dinner, which had thrown her into a rage. Our position was that she lied. And if you are going to seek modifications of Mr. Tuggle's conditions of supervision in a manner that would subject him to imprisonment if he was found to have violated them, he has a due process right to question that woman under oath and bring out all of the evidence indicating that her allegations of domestic violence were false from the very beginning, and were, in fact, a lie. So I see that my time is up. Thank you very much, Your Honors. Do you want to interrupt at all? Yes. Good morning, Your Honors. Nancy Olson appearing on behalf of the government. May it please the Court. The District Court in this case did not abuse its discretion when it imposed the two conditions for the evaluation and for the no contact order. This is because the District Court specifically said that these conditions were related to the 3553A goals of promoting rehabilitation. Well, could he just impose this condition on anybody? On any defendant? For any defendant? Could he impose the domestic violence evaluation on any defendant? No, he could not, Your Honor.  So what are the facts? So the facts here, the District Court tells us what those facts are on page 34 of the record. He says, I considered two things. I considered the probation officer's August 19th report, and I considered the proffer by a defense counsel at the hearing. So we know that proffer included essentially what evidence would have been put on about that dispute. We don't need to know who was right or who was wrong in that dispute. We just know that there was a dispute, and that we know from the probation officer he had some concerns about some things in the defendant's past, underlying issues of violence, not related to this woman, but specifically that he was hard to supervise in the recent months, and so the probation officer was saying he was concerned about the situation. The court didn't want to go as far as the probation officer recommended, which was to say the probation officer said, I want to do treatment, and the court said, no, hold on a minute. This is what I've heard today. The fact that he was hard to supervise had something to do with domestic violence? No, just not domestic violence per se, but the uncertainty of what was going on with the defendant, and so the district court was left in this position to say, I don't have enough to order treatment, but I do have some uncertainty about what happened here, so I'm going to take the least intrusive course. But then why? I mean, the problem is that let's suppose it really was all just made up. It never happened. Why isn't there some reality testing in terms of a hearing or a substantive consideration of whether it's true or not? I mean, can somebody just come in with any allegation and thereby trigger a condition? If somebody comes in and reports that this guy is dealing drugs, presumably you're not going to have a supervised release condition related to drugs unless you make some factual inquiry as to the truth of it. I think that's correct, Your Honor, and I think that's why we didn't see the district court order treatment. The district court heard a whole lot of information from defense counsel that there was a very unstable relationship here, and the district court said, you know what, rather than ignore this potential volatile situation, I'd just like to gather some more information. And so the result of that could be a couple of different things. We could see the information coming back and, you know what, Mr. Tuggle doesn't need treatment. We did the evaluation. But is the information essentially an investigation into what happened without the projections of the due process projections of a court hearing? No, in this case it's not, because we had the court saying, and Judge Fischer already acknowledged this, this is at page ER 35 in the record. The court recognized the Fifth Amendment concern because Mr. Tuggle raised it at the hearing. This wasn't something that we would be surprised with later. Mr. Tuggle raised it, and the court said, look, I'm not ordering you to waive any Fifth Amendment right, nor could I do that. And so, well, we don't have constitutional right, I think. He did. He said constitutional right, and it was responding to the defendant, I believe, Rachel raised. He said that asking a question that would incriminate him by this, whoever this person is or does the domestic violence and evaluation would be impermissible. That it would be impermissible for him to invoke? No. Or to ask. It would be permissible for him to invoke the Fifth Amendment to some social worker who was asking him questions. Right, so I think what the district judge was saying is he said, I can't order you to invoke. The key that we need to remember in these cases is not whether a situation arises where you need to invoke, but whether waiting for you on the other side is punishment for invoking. And we have a district court here specifically saying, I'm not going to punish you. I recognize you have rights. He said, I'm not ordering him. Correct. He said, I'm not ordering you to waive those rights, nor could I. So he would, you're reading the waiver language, non-waiver language to say that's in effect a grant of immunity for many consequences for the supervised release. Essentially, yes. Because if we look at the other cases, we have the Supreme Court case Murphy that was cited in defendant's supplemental brief. And we also have this court's Antelope decision. So in those situations, we had this defendant that was told, you have to go and answer particular questions. And if you don't, it could result in this penalty. And so, here we don't have Mr. Tuggle being told something along those lines. You need to answer these questions. So in other words, your position is not that he could invoke the Fifth Amendment and not answer the questions. It's that he couldn't be penalized for what the questions turned out. No, it's actually the opposite. He would not be punished for invoking based on the district court's comments. But if he doesn't invoke, if he somehow answers a question that he didn't recognize was an incriminating statement, that you would have to invoke to protect it. Well, Your Honor... If he didn't invoke, then he would have waived it. We're a little bit hamstrung as your earlier questions indicated. We don't know the exact questions. They're not in the record. But let's assume they would be something along the lines, did you beat your girlfriend? As defense counsel indicated, they would be advised to invoke in that situation. We don't have the district court saying, if you say this, you're going to be charged. But we also know he'd previously been charged with the state. So we think that's sort of outside the scope of the rightness question here because the question is simply whether he was threatened. I'm not talking about rightness. I'm talking about the construct of what the order is. You're relying on a statement on 35. I'm not ordering him to write. You said that was in effect a grant of some kind of immunity. Correct. But now I'm concerned where you're saying he's undergoing this evaluation and he doesn't recognize, as one would expect a lay person, even some lawyers don't recognize that this is a voted question. The answer to which, like, when did you stop beating your wife or girlfriend, it can be used against him. And then suddenly he goes back before the judge and says, well, I thought that was a benign question. I answered truthfully. And he said, well, he didn't invoke the Fifth Amendment protection, so I'm going to rely on that and I'm going to now impose more drastic domestic violence conditions on supervised police. Where are we in this case? So we don't have any information to suggest that any further criminal charges might necessarily come from this. We just don't know. Exactly. That's the problem. We just don't know. So would would the government have an objection, and if so, why, to a provision as some of the other cases that just says if nothing you say could be used in a criminal proceeding or with regard to a supervised release revocation? Because otherwise your one thing, the whole evaluation seems like it will be useless. I mean, what's the point of having an evaluation where the guy's not going to answer questions? Or not be answering questions? So what's your position? What do you understand it to be, and if made specific, what would you object to? Based on the district court comments, we would think in this particular case it would be unnecessary, because what the district court was doing was sort of a multi-step process here. Let's say that happens, he goes in and he won't answer all of the key questions and he invokes. That's a situation for the district court to take in the first instance. The district court can say, okay, what do we really need here? Do we need a better full evaluation? Am I satisfied? Do I need treatment? Why don't we just get this straightened out now? Because we don't necessarily have a problem at this time with the district court's insulating comments where he said I'm not ordering you not to invoke. He's not saying you're going to be punished if you invoke or if I can't get a particular question answered. Would you like to be answering questions under those circumstances? To answer questions with the district court? That way you don't know what the ground rules are? No, because I think the district court laid the ground rules when he said I'm not ordering you to do anything that would harm your rights. But that means that you're putting it on this lay person to determine what his constitutional rights are when he's in the room with a social worker, rather than simply saying whatever you say is not going to be used against you. Well, with Mr. Tuggle being represented by counsel, he would have some advisement regarding those issues, we believe. Why don't we just tell him now that nothing's going to be Would you object to either a construction or a remand with a clarification that says whatever he says is not going to be used against you in a criminal proceeding or essentially an amnesty? So it seemed to us that was unnecessary because of the district court comments and because he wasn't threatened with some sort of sanction. But it's not equivalent. But if the court is finding that you disagree with that, then a clarifying instruction wouldn't hurt. But what we're saying is if you read the record closely, the district court comments It's not the same thing as saying I'm not asking him to I'm not ordering him to violate his constitutional rights and granting him immunity in advance. It's not the same. It's not the same, but if you look at Judge Simon's comments, he implicitly provided that, and so we don't think that he would then come back at the hearing and say, you invoked, therefore I'm going to punish you. That's what I don't understand. And what if this gets assigned to a different district judge or something? Well, that district judge would also then be in that position to take it up in the first instance and say, I really need you to answer these questions. You would have to interpret what Judge Simon said. Correct. He wouldn't know any better than we know. Correct. I understand you're not conceding, but would you object? Would it be impossible to work with if we did what she suggested, which is either clarify ourselves about the consequences or ask the district court to clarify? So, Your Honor, while we don't think it's necessary to answer your question, it would not be impossible to work with. And I see that my time is up, so unless the court has any additional questions, thank you. We'll give you one minute for rebuttal. Your Honor, returning to the very basic question of whether there's a basis for any evaluation, while it is true the district court relied on the probation officer's report, that report simply mirrored Ms. Etheridge-Clark's statements, which we believed were false. If the district court had a sufficient concern about the truth of these allegations to order a domestic violence evaluation, Mr. Tuggle had the right to address the witness, to cross-examine, and to provide evidence, to present his own witnesses on the stand, to have credibility determinations made. Even if the government did not want to go forward, the court could have on its own motion, under federal rule of evidence 614, have witnesses called, could have ordered Ms. Etheridge-Clark to take the stand. Counsel, your position is that unless the court held a hearing, and heard from both your client and the woman who he allegedly abused, and made a specific finding that she was telling the truth, that unless he made that specific finding, the judge could not even request an evaluation? That just strikes me as a little bit extreme. Why wouldn't it be enough for the judge to say, you know what, I've heard from both of these individuals, I frankly can't be sure who's telling the truth, but I'm concerned enough, there's at least enough of a risk presence given the volatile nature of their relationship and what I've heard from them in terms of what happened on this one specific occasion, that I think an evaluation would be helpful in terms of me supervising this individual. I guess that strikes me as perfectly reasonable, but you seem to say, unless a hearing were held, and the judge specifically found, by at least a preponderance, that the young woman was telling the truth, that he couldn't even impose an evaluation. Is that your position? Well, yes, Your Honor, and I'm somewhat confused, because your question, Bo, said unless there's a hearing, why can't the judge say, I've heard from both of these individuals? He has not heard from either individual. Because he doesn't need to, he doesn't need to, in this instance. It doesn't matter whether he's able to conclude that the woman is definitively telling the truth or not. She's made an allegation against him, she's retracted it, and we know that that happens, we know that that happens quite often with women who are abused by their partners, and so the judge, I guess what I read him as saying is, look, I don't need to get to the bottom of this to figure out conclusively who's right and who's wrong. I see enough warning signs here, enough red flags, that I think an evaluation is warranted. And I guess I don't see what's so unreasonable about that, and why for that reason, I don't see why there would have needed to be a hearing to conclusively figure out who, in fact, was telling the truth. I think that there's an inaccurate statement to say that Ms. Etheridge-Clark ever withdrew these allegations. This is not a situation where we ever have her in writing saying, I withdraw these allegations. What we have her doing is failing to come forward under a subpoena to substantiate them. What we have is significant additional evidence, not just Mr. Tuggle, but the other individual who was present that night, Mr. Brown. We have Facebook pages, her notes that she wrote to Mr. Tuggle in jail where she's writing in the name of the woman she accuses him of messing around on him with her. So it's not, she says it, she recants. She says it and there is all this evidence as to why it is a lie, even though it has never been recanted. And while it's true... Okay, then I'm being generous in saying that she retracted it. My point is simply that she came forward and told the probation officer that this had happened, right? Now, I'm willing to be generous and say that by virtue of her not being willing to go forward with the state charge, that let's assume that she retracted the allegations. She said, no, you know what, actually, for whatever reason, I made that up and it never really happened. That to me is the strongest case in your client's favor, right? Not necessarily because as you have said, it's not uncommon for domestic violence victims to recant. That is not necessarily proof. That's also not uncommon and it is so ununcommon that there is the old adage, hell hath no fury like a woman scorned. It is also possible that she lied and has lied from the get-go and lied about being pregnant and lied about him beating her and lied about her name when she wrote him up in jail. The judge looks at this and concludes that there is at least enough of a risk that she may well have been telling the truth when she first told the probation officer that she had been abused, that at least an evaluation is warranted. Not any more drastic step. Not certainly I'm going to violate you and imprison you. Not that I'm going to order you to undergo some course of treatment, but simply I'm going to I think an evaluation would be helpful. That's all that the judge ordered here. And I think that if the judge has that concern, what Mr. Tuggle is entitled to under due process is to confront that witness, to make or take the stand, because what if she does on the stand acknowledge it's all a lie, I lied to the police, it never happened. At that point in time, does the judge have authority to order this evaluation? I don't think he does. He may well, if he thinks that the woman has testified under duress, psychological or otherwise. As we know, battered spouses frequently do. Witnesses are fearful for their lives if they repeat the allegations about drug dealing or prostitution or whatever. So, counsel, I appreciate your advocacy, but I'm having this real strong problem handicapping a district judge who's administering supervised release to say that he shouldn't seek some kind of professional assistance in fact-finding so long as the process doesn't compromise your client's constitutional rights about self-incrimination or whatever. And so, I disaggregate the argument. Yes, Your Honor. Our position is it's just a dangerous situation to say every time any woman makes an allegation it's presumptively true, and we can evaluate. I don't think that what we may be saying, I don't think we're that careless or that broad. I think what we'd be saying is this judge on these facts, on what he heard and evaluated as part of his responsibilities in the district court persuade him to invoke a tool. And I have as much trouble writing an opinion frankly, than saying no, he can't do that. Thank you. Okay, thank you very much. Thank you both of you for your arguments. United States v. Tuttle and we will take a temporary recess or a recess.
judges: Fisher, Berzon, Watford